We're happy to hear your argument in our last case, this morning, Urbina v. Holder, No. 13-1084. Good morning, Your Honors. Philip Eichhorn for Petitioner Gustavo Urbina. May it please the Court, we have a multitude of issues here. Before we actually get to what I consider the big hitter, and that is whether or not a matter of Camarillo should stand and whether or not this Court should overrule it. But before we get there, there are some issues that I would like to address that I think that are very pertinent that could actually avoid having to get to that big issue. First of all, is whether or not the immigration judge in the original proceeding erred in not terminating those proceedings when my client sustained his burden. Essentially, the notice to appear that was issued stated that he had entered without admission, and he proved that he had. And so at the end of the day, that day, did the immigration judge err in not simply terminating the proceedings? And I'd ask the court to say that yes, the judge did. The law is pretty straightforward. It says if you've been admitted, then you are not inadmissible. And the charges contained in the notice to appear simply state that if you're inadmissible, we're going to remove you. So he had gotten his ticket, he had gotten his indictment, he had gotten his complaint, he had went to court, and he won the case. The immigration judge erred dramatically in stating that there was not good law that was put forth for him to terminate the case at that point. And I think that that's a critical point that we're at, because if the immigration judge does terminate proceedings at that time, we're not here on anything else. All the remainder of the hearing in January 5th, the hearing, the I-261 that's later filed, the memorandum of law. All of it goes away if the immigration judge erred in finding, if my client did sustain his burden, which he did. The second issue that comes, and assuming that the court doesn't find that way, is that on January 5th, there was actually a hearing without charges. I find that to be very concerning. My client sustained his burden in the motion to terminate. On January 5th, the judge looked at the passport, looked at the stamp. The government counsel did the same and said, yes, we're going to file new charges. But there should have been, or were technically, no charges pending on January 5th. But we held somebody in removal proceedings on that day. That concerns me. Well, the judge granted a continuance, right, to allow the government to refile the charges? That is correct, Your Honor. You didn't object to that? I had already made my record, and I knew exactly what was going to happen. I will raise the issue is that in that specific courtroom, you have to be very careful what you say. And so I had already made the record on the motion to terminate. I'm not sure I understand what you mean by that. I mean, either you objected or you didn't. I didn't object. You're correct, Judge. Very specifically, the judge in this specific case has a tendency to not really care for, I guess is the best way to say it, but not really enjoy counsel making any kind of challenges. And in fact, he specifically states that- That can be your opinion, but that's not in the record, and that's not something that you've argued. Fair enough, but with the motion to terminate, it was there. We did make the record. The judge had already decided that he's not going to rule in our favor, but then looks at the documents anyway and then says, well, I think that you're right. Now let's move on and let's, government, you can go ahead and file new charges. Let me ask you about this motion to terminate. I get your point, but part of the problem in this case was that your client misstated the facts with respect to how he got into this country to begin with, right? Two entries. Okay. And that's not in the court, that's not in the record of proceedings. There was no testimony taken from my client. What do you mean by two entries? A person can enter the United States multiple times. He did enter unlawfully, entered without inspection, as attested to in 1998, but he also did depart and did re-enter with a visa. And so, because of that, there is a factual issue that still needs to be resolved, as we did brief, as to the length of time that he was technically outside of the United States. In the memorandum of law, in fact, that the judge did order me to produce, that was one of the issues, I believe it's in the third paragraph on the second page, that we have a factual issue here that needs to be resolved as to whether or not either the 1998 entry minus his time outside the United States. And then after his entry in 2000, if that would be the ten year physical presence. That's still up for conversation down as far as a fact goes. We left that, we specifically put that in there because the judge wanted to run this case out. I mean, I appreciate that no one was there, but that's the perception that we had. And so we put into the record what we could without, we didn't have anything to say exactly what date he left the United States. No, you want to have your cake and eat it too, is what you're telling me. Just like ICE does when they issue notices to appear without having correct charges in it. I mean, at the end of the day- But your client did file these applications for temporary protected status saying that he entered without inspection. That's correct. That's correct. And that brings me to my third point, which is that the Board of Immigration Appeals, in the denial of the motion to reconsider, makes a finding of fraud. There can be two entrances. People can enter and depart the United States more than once. And the fact that the BIA took that as fraud is a leap that I would hope that this court would overturn and find to be impermissible fact finding. Did you argue that in your brief? Yes, we did. In the brief? In the supplemental brief, your honor. In the supplemental opening brief, we specifically, the statement of the issue is that did the BIA engage improper fact finding when it stated that the respondents' statements were fraudulent based on documents not admitted as evidence and where the immigration judge made no factual findings. And that, of course, is the third issue that we have that I wanted to address before we actually got to whether or not Camarillo should be applied in this specific case. There is no indication that my client didn't enter both times. For purposes of the argument that we made, we wanted to attack the issue of whether or not this notice to appear was in fact facially valid when the government knew or should have known that they were putting incorrect information into it. The stop time rule is there for a purpose. It was enacted back in IRA, IRA. And the idea was to keep foreign nationals from accruing unlawful presence while they were in proceedings so that they could apply for suspension of deportation. The consequence was with the advent of the new cancellation of removal, is that if somebody didn't have that 10 year physical presence, that that case would, they would not be eligible for it. And so instead of allowing a foreign national to continue to get, to accrue their physical presence to become eligible for that benefit, the stop time rule was rightly enacted. However, it's application is what concerns us. Here, what you have is a notice to appear where the government has the information, and they specifically choose not to include it. In a sense, they can go into a community, throw notices to appear in the air, say pick them up, and you've been served. We don't have to put in the correct information, and that's the position that the government has taken on this. Well, I thought the government said that it filed the initial one based on these applications for temporary status that showed those dates. In the administrative record on page, I believe it's 188, or close to there, yes, 188, which is the form I-213. This is the document that is- I'm at the one at page 146. That is the temporary protected status application. That's correct, Judge. And that's noted in the I-213 on page 188 in the third or fourth paragraph where it says immigration history and USCIS denied I-821 and I-765 and gives a litany of those filed. On the third last paragraph, subject indicated he entered the United States by air and on unknown date in 2000 through Miami, Florida. The government then says that no record was found, but yet we had a passport with an admission stamp in it. And so what the government decides to do is, is they decide let's get this paper processed and here's your notice to appear based off of what I see in my records. There's no indication in the record submitted by DHS in that motion that would include those temporary protected status applications. That this specific officer did any kind of review whatsoever of any database that was available to him that's outside of the Department of Homeland Security, and in specific the Department of State. Or within the Department of Homeland Security, which could be Customs and Border Protection in the text two database. And those databases, as I noted by memorandum of law, those are routinely accessed by DHS officers. And it would have shown that he did, in fact, enter in 2000 using a visa and being stamped in. Ultimately, that's why DHS brought the charges. After I called them on the carpet on it, that's when they decided to amend it. So what we have here is we have ICE saying that because of the past history where there really wasn't any case law with the exception of the Dababna case in the Seventh Circuit. We can issue notices to appear however we want. Why don't you, before your time runs out, why don't you tell us why deference under Camarillo, which the board cited, why is that not right? I point to four words, and I believe that the statutes themselves together are unambiguous. I don't think that it is ambiguous as Camarillo states. The language is serve under and shall specify. The stop time rule requires that the government serve a notice to appear under 239. And under 239, it says that they shall specify. What about a notice? A written notice. But it doesn't say, it just says a notice. Sure, and then that would go to our next argument, which is if that is ambiguous and matter of Camarillo is correct in saying that it is ambiguous, is that a reasonable interpretation to say that we can serve a notice to appear that doesn't have correct information in it. In matter of Camarillo, it's about a date and a time, and there's actually a second statute. Camarillo clearly was addressing any defects. You're right, the one's in issue there, but there's a footnote in Camarillo that it certainly covers all the defects. And we would- It goes back to Judge Agee's question about why don't we defer to Camarillo. And in Camarillo, I believe that they completely obliterate the idea of written notice. By saying that we can change anything here. Here's our second statute that says I'm allowed to change my date and time and place. But it doesn't address whether or not you can all of a sudden change the charges as put forth or the factual allegations just to fit their prosecution. Actually, that situation is more usual to what we look at, for example, in criminal indictments. You can put certain charges down and then the government can later amend them. We allow that. Understood. I'm out of time. You can answer my question. Thank you, Judge. I would say that because the finding of guilt in a criminal case is- Requires more of a burden. Exactly. Than does here. And then, but- How does that help you? On the flip side of that is, is that you don't become eligible for a form of relief. You don't have an interest in- No, you become eligible for going to prison. And that requires that sufficient notice pleading. You're a bigger burden of proof by the government, and yet we let them change the notice. Agreed, we let them change the notice. And I guess the distinction that I'm trying to make here is, is that you know what. You know what the consequences are. It's prison time. Here, when you're changing things, you're changing the ability for somebody to apply for relief. You're facing prison time. Often the charges get bigger, so you're facing more prison time with the change. Correct, and then you still get that opportunity to file that motion for bill of particulars. And you still get that opportunity for discovery under that. And in those specific cases, yes, you can. But you have to go through a specific process and procedure. You have to go back to the grand jury to get that amended indictment. The criminal defendant has things easier than your client. I think that there's more procedural safeguards because you do have to go back to the grand jury to get that amended indictment. Here you have a DHS officer who is not an attorney and is not presenting this in front of a chief counsel. They're writing this up in the back of their patrol- The result is not jail. The result is jail, mandatory- Not because of the deportation proceedings, maybe because of something underlying what your man did. That being, for my specific case, no, there was not a bond issue. But should an officer decide to write up a notice to appear in a very specific manner, that can cause, very easily, a determination not to issue a bond. And we see that all of the time, especially when people are not giving their, there's an issue with an address, there's an issue with where they're living, an officer can take anything that they want to get their hands on and make a determination under- It turns into a criminal conviction? It can turn into detention without bond under 236C. It's not, but I guess where we were headed was, is this is prison versus this is detention. And I know that DeMore versus Kim specifically states that there is a difference. It's still a loss of liberty, thank you. Could you be able to address your colleague's arguments as you gave them? I was not following them too well. Yes, I can try to. Let me, I was actually, let me just start by saying that although he does raise a lot of issues, we believe, as I believe we stated in our brief, that the only real issue for the court to address is the stop time rule in service of the notice to appear. But I will start with the first issue he raised, which was whether the immigration judge erred in not terminating proceedings. The regulations specifically allow for the substitution of removal charges. It was a regulation that was changed in the 1980s for the convenience of then the INS, now the Department of Homeland Security, removal proceedings do not have to be terminated and a new notice to appear filed, the DHS is permitted to and often does file a substituted removal charge. So there was no error in the immigration judge denying the petitioner's motion to terminate proceedings. It was perfectly proper to allow DHS to file a substitute removal charge. All that is required, and petitioner had an opportunity to do it, is to give him an opportunity to respond to the substituted removal charge, which he did. He filed a written response. So our contention is that there's no merit to his claim that there was an error in terminating proceedings. Then I believe he briefly touched on the fraud issue, which was in the board's second decision, the denial of reconsideration. Our position, we stated in our brief, is that the court doesn't need to reach that issue, that the immigration judge found that he didn't accrue the necessary tenures of physical presence because it ended when the notice to appear was served. The immigration judge stated the facts about the dates listed in the applications for temporary protected status, which I'll get to in a moment, he did not make a finding of fraud. But we don't believe it's necessary for the court to decide that issue. That it can decide the application of the stop time rule separate and apart from whether the petitioner engaged in actual fraud. Which is not to say that the facts concerning the applications for temporary protected status aren't relevant, they are, and the immigration judge did mention them. It's just that the immigration judge did not characterize them as fraud. The- So what authority did the BIA have to characterize them as fraud? Well, we believe there are a couple of ways you can read that denial of reconsideration. One possible way is not as an actual finding, but as a characterization. The petitioner does argue that it was outside the scope of the board's authority to make that fraud finding. We believe that you can set that fraud finding aside, that it's not necessary to resolution of the issue in this case, which is the stop time rule, and that that issue can be decided. Even assuming for the sake of argument that he did not engage in fraud. I agree with that, I guess the, should we? I mean, it doesn't seem to me that that statement and that opinion really amounts to anything, or has any legal repercussions if it was beyond the authority of the BIA to say. Well, I don't believe so. I mean, he wasn't charged with any ground of removability, and there are various provisions of the INA having to do with fraud. None of those are at issue in this case. I don't understand your response. You said I don't believe so. What don't you believe so? Were you agreeing with me? I'm sorry, I believe I am agreeing with you that there are no repercussions to that statement. That it did not form a part of the finding of removability. It was, I don't know why the board put that word in there, but we believe it can be isolated. And that it's not necessary to resolution of the issue in this case. I would, however, like to address the issue of the notice to appear. And I believe we make the point in our brief that while the petitioner may not have engaged in actual fraud, it is also the case that he did make these statements in three applications for temporary protected status, which he filed. And the form I-213 makes clear that when he was picked up and interviewed by a deportation officer, he said he entered in 2000 on a tourist visa. The form I-213 states no record was found. I can't speak to why no record was found of the visa, but it does state that. And then it says he admitted that he stated in three applications that he entered without inspection in 1998. And based on those statements, the notice to appear was issued. The petitioner seems to make various allegations that it was DHS that somehow engaged in, I don't know if fraud is the right word, but unsavory behavior in willy nilly issuing an NTA based on, that had no basis in fact. It did have a basis in fact. There were three documents, which the petitioner signed under oath, indicating that he had entered without inspection in 1998. The DHS officer said that they conducted a search, they couldn't find evidence of this tourist visa, and so they charged him as inadmissible. As soon as a hearing was eventually held in this case, and the petitioner showed up with his, I believe it was the tourist visa, maybe it was the passport with a stamp in it, whatever it was. DHS filed the substitute charge of removability. So while we don't rely on the board's finding that the petitioner engaged in fraud, we also don't believe the facts in the record support petitioner's allegation that DHS engaged in improper behavior. Which is an important backdrop to the legal argument we make, which is that service of the notice to appear in 2009 was effective to stop the accrual of time for cancellation of removal. Well, under Camarillo, does the government maintain that this notice that you give doesn't have to have any of the information listed in 1229A? No, and that's not this, that is a case for- I know it's not. Another day. You hear in the earlier, we have to decide not just this case, but precedent in the future. So where do we draw the line? Well, a part of why I say that's an issue for another day is that the board did state in Camarillo that the statute was ambiguous. It's possible that what it meant by that was there may be, and speculating that if a notice to appear was served with no information, that maybe that wouldn't be sufficient, I don't know. But in Camarillo and here, where in Camarillo the issue was the date and time of the removal hearing, which by regulation can be served later. And here, it's a substituted removal charge, which is also allowed by regulation. That in those cases, then service of the NTA is effective. So there was a regulation that permitted the substitution in Camarillo, and there's one that permits it here? I believe there, yes, I believe there's a regulation that permits the time and place. I know it's done frequently, and there's certainly a regulation that permits the substitution of removal charges. It's 1HCFR 1003.30, I believe. The first circuit in Chung, something like that. Yes. Reached a decision that seems close to what we have in this case, and did so on its own analysis without citing Camarillo. So is that the proper way to resolve the case, or is Chevron deference to Camarillo the more appropriate way? Well, I don't, the timing suggests that the first circuit may not have been aware of the decision in Camarillo. I believe they came out. That was about six months after. But I, well, but I believe it was before the briefs were filed, and I don't know whether 28 days were filed. I don't know what happened in that case, and I don't know why Camarillo wasn't mentioned. We believe that, and yes, the situation in Chung is identical. Although I believe in Chung, well, it was a substitution of an inadmissibility charge for a removal charge. So in that way, it's identical. Because the board now has a precedent decision in Camarillo, yes, we believe that the proper way to analyze it is with deference to the board's decision. But that the first circuit's decision in Chung certainly informs the analysis. Especially insofar as its analysis supports the board's decision. Although it does suggest that it's a plain language issue. So it doesn't really discuss Chevron. But yes, we believe that because there is now a precedent board decision on the issue, that deference is due to that decision. I believe that that addresses most of the arguments made by Petitioner in his brief and at argument. If the court has no further questions, I have nothing further. Thank you. Thank you. Directly. Thank you. May it please the court, I was listening to those past oral arguments. And I specifically noted, where do we draw the line? And I think, Judge, you hit the nail on the head with Chung. It is a very articulate decision. The difference in that case and this case is, is that we sustained our burden. We won. We showed them proof of admission. We beat the charges on that notice to appear. Chung substituted charges so that they could win. They didn't have that same factual scenario. And so, where do we draw the line? We draw the line when the foreign national wins. And I think that that's what this has to come down to, is there has to be some sort of finality. Otherwise, we do go ad infinitum with these types of cases, because if counsel is correct, and if that regulation is appropriate, and does give the right- What's the regulation, are you talking about? I think it's 1245. What does it say? That DHS can amend during the course of proceedings. I think that that gives them free amendment to do whatever, whenever they want with whenever their charges are. And I think an interesting US Supreme Court- You're saying that's not authorized by the statute. And we did argue that, that it is not authorized. Well, you didn't argue it the whole time. It was a latecomer. It was a latecomer, and in part that was due to my reading of Judelang versus Holder, which is the US Supreme Court case which deals with the idea that just because there's a dent of repetition, doesn't necessarily make it right. Where Judelang called the DHS out on the carpet, and they said, you just can't continue to do this. You have to, instead of flipping a coin- You have a motion to reconsider in the BIA, you didn't make the argument, correct? Until the motion can reconsider, that's correct. And I think that Judelang came out after the briefings were submitted. And that's where the idea spawned that we could actually make this argument, and that somebody would listen to us. I think that going back to a very good question about the repercussions. There are tremendous repercussions in this case regarding that finding of fraud. A very quick procedural history for Mr. Urbina is this. He has a United States citizen child. If the court does not find in his favor, he will depart the United States timely. He will do so under a grant of voluntary departure, but he's eligible to return. That finding of fraud will now stick in his file and will require him to now file a waiver in order to come back in, showing that he either didn't make a fraudulent statement or that he has some sort of an extreme hardship. That's under 212, INA 212A6CI. But you're assuming that the fraud finding has some legitimate import, and I think the government conceded that it doesn't. So why couldn't you argue to an IJ or anyone else that it doesn't mean anything? If he loses and when he comes back, the Department of State will not let him back in until such time as he clears that burden of inadmissibility. And because there's no time limit on that, it will follow him forever. But isn't that only if they found fraud as a basis for inadmissibility? No. The way that the statute reads is, is you can make a fraud finding anywhere. But it has to be a fraud finding. And I think that the whole dialogue with Judge Diaz established that the government does not regard this as a fraud finding. With the BIA's language in there, the Department of State will give it full faith and credit. You can make a copy of this transcript and suggest otherwise. We certainly can, but that's not binding on the Department of State, and they have the doctrine of consular non-reviewability. At that point, you can come before us again, I suppose. We can't, because nobody has jurisdiction over consular review. The government is the government. Government has made the admission here that's not binding. That's the Department of State as well as the Department of Justice. They're all parts of the United States government. I would love to see that happen, and the Department of State actually do that. That would be wonderful. But I think the other issue here is, what's the other repercussion in regards to this notice to appear, is that he becomes in and admitted. And because he has a United States citizen child that can petition for him, if he sustains this burden, he is eligible to then adjust status. Okay, and in the conscript of where we are in this case, he could ask the department and has asked the Department of Homeland Security to administratively close his case. The only thing that's sticking for their point of view is the BIA fraud finding. They could administratively close this case and put it on the back burner and then allow his son to petition for him, and he would then eventually get his green card. He would get his permanent resident status. So that Board of Immigration Appeals decision does have an impact on the DHS. Now if the government's going to go back to their DHS counterparts and say, hey, wait a second. We don't see the fraud here, maybe you should admin close the case. Maybe we're filing something to dismiss this petition for review. So maybe this argument does have that impact on the government, and maybe the government does follow suit. But let's assume that they don't. If we win the argument that he was in and admitted, we can eventually file for him to adjust status. And that's a huge difference for him. And I think it's critical that we see that. The government wants to stand on Camarillo. I think Chung has some pretty good reasoning to it. And I think that Chung is not identical in its facts because ultimately we did win. But I also think that Camarillo here should be overturned if we do eventually reach that decision. I think the language is pretty straightforward. But if you find that the language isn't straightforward and it is ambiguous, I think that the unreasonable interpretation is that we can write just about anything we want to write on this notice to appear. And it will suffice. I think that the previous argument had another good statement in there, and that's the Iqbal standard. We don't necessarily have to get to that, but maybe we do as we have to plead with sufficient particularity. And we have to be careful what we accuse people of. And yes, the proper thing to do in this specific case would have been for the DHS to withdraw the NTA or to file the I-261 before we got to that January 5th hearing. But they didn't do it. But what should have happened, and in my last ten minutes, is the immigration judge should have terminated proceedings because we sustained our burden. He let them continue to do their removal proceedings. And I think that that's where we have to come back to. Thank you. Thank you. We will ask the clerk to adjourn court, and then we'll come down and greet the lawyers. This honorable court stands adjourned until tomorrow morning at 9.30. God save the United States and this honorable court.
judges: Diana Gribbon Motz, G. Steven Agee, Albert Diaz